UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERIMA LEWIS and DAVID LEWIN,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF BERKELEY,<br><br>　　　　Defendant.<br>_____ / | No. C-08-5089 JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Docket No. 4] WITH LEAVE TO AMEND** |

## I.   INTRODUCTION

Plaintiffs Kerima Lewis and David Lewin ("Plaintiffs") brought this action against the City of Berkeley ("Defendant") as a result of Defendant's decision to revoke the use permit of a U-Haul facility located at 2100 San Pablo Avenue in the City of Berkeley. Plaintiffs sued on October 8, 2008, alleging violations of the Fourteenth Amendment to the United States Constitution, Equal Protection Clause, and violations of 42 U.S.C. §1983. Plaintiffs seek damages, injunctive and declaratory relief. Defendant filed the petition for removal of the action on November 7, 2008, and filed the present motion to dismiss on November 12, 2008.

Defendant raises four principal arguments. First, Defendant argues that Plaintiffs lack standing to seek injunctive and declaratory relief as to the revocation of U-Haul's permit. Second, Defendant asserts that Plaintiffs have not exhausted administrative remedies in the state courts under California Rule of Civil Procedure §1094.5. Third, Defendant argues that Plaintiffs' first cause of action under the Equal Protection Clause of the United States Constitution fails to state a claim. Fourth, Defendant argues that Plaintiffs' remaining causes of action under 42 U.S.C. § 1983 based

1 upon equal protection, interstate commerce and right to travel fail to state a claim upon which relief
2 can be granted.

3 The hearing on Defendant's motion to dismiss was held on December 19, 2008.
4 For the reasons set forth below, the Court GRANTS Defendant's motion to dismiss with leave to
5 amend.[1]

## II. BACKGROUND

### A. Factual Background and Procedural History

Plaintiffs' complaint is based upon the City of Berkeley's decision to revoke the use permit of a U-Haul facility. Plaintiff Lewis is an African-American female and resident of Berkeley, California. Complaint at ¶ 2. The Complaint does not allege the race, national origin or residence of Plaintiff Lewin.[2]

Plaintiffs allege that the City of Berkeley has ". . . engaged in a course of conduct the result of which discriminates against Plaintiffs." Complaint at ¶ 7. Although Plaintiffs allege a course of discriminatory conduct in their complaint, the only specific act mentioned is the revocation of the permit and resulting closure of one particular U-Haul location, located at 2100 San Pablo Avenue in Berkeley, California. *Id.* at ¶¶ 6, 7. Plaintiffs assert that because they cannot afford to own their own truck or large vehicle, they rely upon "vehicle sharing services. . . to assist with their freedom of movement and right to travel." *Id.* at ¶ 5. At some point, the City of Berkeley revoked the permit of the U-Haul facility located "within walking distance" of Plaintiffs' residence, which resulted in closure of that facility.[3] *Id.* at ¶ 6. Plaintiffs assert that Defendant's decision to close this facility

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] It appears that paragraph three of the Complaint is intended to allege the residence of Plaintiff Lewin; however, the complaint reads: "At relevant times, Lewis was a resident of Berkeley, CA."

[3] Although not indicated in the Complaint, it is clear from the judicially-noticeable documents provided by Defendant that the City Council held a hearing on the matter in September 2007. On October 9, 2007, the City Council revoked U-Haul's use permit based upon various violations of the Use Permit, city ordinance, and public complaints regarding U-Haul trucks and other vehicles being stored on public streets. *See* Defendant's request for Judicial Notice ("RJN" Exh. A). The Court makes no findings with respect to the propriety of that local decision.

has resulted in discrimination "by restricting [Plaintiffs'] freedom of movement by ceasing the local operation of truck-sharing operations such as the U-Haul facility at 2100 San Pablo Avenue without any consideration for actual and viable alternatives that adequately secure these rights." *Id.* at ¶ 7. Plaintiffs allege that they have been disparately impacted by the closure of this facility because "Lewis regularly uses U-Haul as the sole convenient and affordable truck share enterprise to assist her in her various moves and attempts to find living quarters in an area dominated by transient apartments." *Id.* at ¶ 8. The closure of U-Haul prevented Lewis from "completing a move causing her to suffer significant harm." *Id.* In addition, Plaintiff Lewin rented a U-Haul in another location and due to the City of Berkeley's conduct, he was unable to return it at the San Pablo location, his end destination. *Id.* Plaintiffs do not provide the date on which any of these incidents are alleged to have occurred. Plaintiffs assert that:

> In both these and other examples additional prohibitive burdens are unfairly placed on Plaintiffs' freedom of movement and right to travel, needs that are exigent and critical in their neighborhood. The effects of these disparate impacts include, but are not limited to, reduced educational, residential, and employment opportunities – essentially creation of an invisible fence around a subclass of the population."[4]

*Id.* Although the words "other examples" appear complaint, no specific examples other than the closure of the one U-Haul facility are provided in the complaint.

In the first cause of action, Plaintiffs claim violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Plaintiffs assert that the Defendant's conduct violates the Equal Protection Clause because it disproportionately affects Lewis "and other members of the protected class." Complaint at ¶ 12. The protected or injured class is not specified in the complaint. Plaintiffs allege generally:

> The individuals most affected by the City of Berkeley's unlawful course of conduct. . . are those segments of the population that are the most racially diverse; more likely to be non-English speaking; have residences with the highest proportion of children under the age of 18; are more likely to live in a single parent household; and are more likely to be unemployed.

*Id.*

---

[4]Plaintiff Lewis asserts that she is an African-American female who resides in a "geographic area within the City of Berkeley that is commercially frequented by customers who are demographically comprised of a black plurality." Complaint at ¶ 6.

3

Plaintiffs' second cause of action alleges violations of 42 U.S. § 1983.  Specifically, Plaintiffs claim deprivations of their constitutional rights to equal protection under the law, interstate commerce and the right to travel.  *Id.* at ¶ 16.  Based upon Defendant's conduct, Plaintiffs assert that Defendant has violated their civil rights.  *Id.* at ¶ 18.  The third cause of action seeks declaratory relief.  Plaintiffs assert that "a judicial declaration of the rights and duties of the parties is necessary to avoid a multiplicity of actions."  *Id.* at ¶ 24.  The complaint provides no specificity regarding the declaratory relief sought.   Plaintiffs seek damages, injunctive relief and a declaration of the parties' rights and obligations.

**III. ANALYSIS**

**A. Motion to Dismiss Standard**

A complaint may be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P 12(b)(6).  A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007) (quoting *Car Carriers, Incl v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotations omitted; emphasis in original).  For purposes of resolving the motion, courts accept all allegations of material fact as true and construe the complaint in the light most favorable to the nonmoving party.  *Nat'l Wildlife Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir.1995).

**B. Request for Judicial Notice**

The Defendant requests that the Court take judicial notice of  ten matters outside the pleadings, all of which relate to legal proceedings involving U-Haul and the City of Berkeley as they relate to the closure of the San Pablo facility: (1) October 9, 2007 – Berkeley City Council Resolution No. 63,842-N.S.(attached to RJN as Exhibit A); (2) October 19, 2007 – U-Haul's Petition for Writ of Mandate and Complaint for Injunctive Relief, Declaratory Relief and Inverse Condemnation, Alameda County Superior Court Case No. RG07352204 (attached to RJN as Exhibit B); (3) January 31, 2008 – Order – Petition for Writ Denied, Alameda County Superior Court Case No. RG07352204 (attached to RJN as Exhibit C) ; (4) Notice of Appeal, Alameda County Superior Court Case No. RG07352204 (attached to RJN as Exhibit D); (5) May 5, 2008 – Complaint for

4

Violations of the Fifth Amendment to U.S. Constitution, etc., United States District Court, Northern District of California, C-08-2313 WDB (attached to RJN as Exhibit E); (6) September 3, 2008 – Order Staying Case Pending Resolution of California State Court Proceedings; United States District Court, Northern District of California, C-08-2313 WDB (attached to RJN as Exhibit F); (7) May 21, 2008 – Complaint for Injunction/Abatement of Public Nuisance, Alameda County Superior Court Case No. RG08 388586 (attached to RJN as Exhibit G); (8)August 14, 2008 – Order re Preliminary Injunction, Alameda County Superior Court Case No. RG08 388586 (Attached to RJN as Exhibit H); (9) August 15, 2008 – Notice of Entry of Order: Preliminary Injunction and Order, Alameda County Superior Court Case No. RG09 388586 (attached to RJN as Exhibit I); and (10) September 23, 2008 – Cross-Complaint, Alameda County Superior Court Case No. RG08 388586 (attached to RJN as Exhibit J).

Plaintiffs object to the request for judicial notice claiming that Defendant seeks to have the Court resolve disputed issues of fact contained in those documents. Plaintiffs' Opp. at 5. Plaintiffs argue, relying on *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), that the Court may not use judicial notice "to resolve disputed issues of fact." Plaintiffs' Opp. at 5.

Under Rule 12(b)(6), if "matters outside the pleading are presented to and not excluded by the court, the [12(b)(6) ] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed.R.Civ.P. 12(b). Under the "incorporation by reference" rule, however, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). In addition, "[t]he court may properly look beyond the complaint only to items in the record of the case or to matters of general public record." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988). Specifically, judicial notice may be taken of orders and decisions taken by other courts and administrative agencies. *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 207 (9th Cir.1995) (overruled on other grounds).

Here, Defendant asks this Court to take judicial notice of decisions and pleadings filed in two court cases, one pending in this district, case number C-08-2313 WDB and one pending in Alameda County Superior Court, Case number RG07352204.  The Court may take judicial notice of records of an administrative proceeding (the City Council proceedings) and documents file in another court.  Accordingly, the Court takes judicial notice of Exhibits A-J, attached to Defendant's Request for Judicial Notice.   The Court does not rely upon these documents to resolve disputed issues of fact. *Lee,* 250 F.3d at 690 ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")

**A. Standing**

Defendant argues that Plaintiffs lack standing because Plaintiffs do not have a sufficient stake in the outcome of the case to justify the exercise of this Court's declaratory or injunctive powers.[5]  Defendant argues that the dispute in this case is between the City of Berkeley and U-Haul, and U-Haul has exercised its rights to challenge the Defendant's actions through the October 2007 Writ and Request for Injunction.  Defendant argues that the only action Plaintiffs seek to have enjoined is Defendant's decision to revoke U-Haul's use permit.  Defendant argues that "the propriety of the City's revocation of the Use Permit is not a constitutional matter.  Instead, it is an administrative challenge subject to state process of challenging the City's action through an administrative Writ of Mandate." Defendant's Motion at 5.

 Plaintiffs argue that they have standing to bring suit based upon the discrmininatory impact of the City of Berkeley's actions.  They argue that they do not challenge the City's decision to revoke the use permit directly; rather, their claims are based upon the discriminatory effect of Defendant's conduct.  Plaintiffs do not, however, specify the injunction or declaration of rights they seek.

The Court may properly dismiss a claim under Rule 12(b)(6) where the plaintiffs lack standing. *Sacks v. Office of Foreign Assets Control,* 466 F.3d 764, 771 (9th Cir. 2006 ("Article III

---

[5]Defendant clarifies in its reply brief that its standing argument is not directed toward Plaintiffs' claims for monetary damages under 42 U.S.C. §1983.

standing requires the plaintiff to establish standing for each challenge he wishes to bring and each form of relief he seeks."), *cert. denied*, 127 S.t. 2033 (2007); *Ellis v. City of La Mesa*, 990 F.2d 1518, 1523 (9th Cir. 1993) ("[E]ach plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."). To demonstrate standing based on a "threatened injury," a plaintiff "must show that the threat of future injury is both 'real and immediate'." *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1992) (*en banc*) (*citing City of Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)). "Conjectural" or "hypothetical' injury is not sufficient to meet this requirement. *Id.* Nor is past illegal conduct sufficient if it is unaccompanied by any present adverse effects. *Id*

With respect to Plaintiff Lewis, the Court finds that Plaintiff has alleged sufficient facts to provide standing to bring an action under 42 U.S.C. § 1983. First, Plaintiff Lewis, as an African-American, is alleged to be a member of a protected class. Second, she has included allegations in her complaint that the City of Berkeley's revocation of the U-Haul permit has resulted in a discriminatory impact on her. As a member of a protected class who alleges discrimination based upon a government law or regulation, she has standing to bring suit. With respect to Plaintiff Lewin, however, the Court finds that the current complaint fails to allege sufficient facts that would provide Plaintiff Lewin with standing to sue. He is not alleged to be a member of any protected class. Plaintiffs allege generally that they live in a neighborhood that includes non-English speaking people, households with children under age 18, single parent households and people who are unemployed. Complaint at ¶ 12. Nowhere in the complaint, however, has plaintiff Lewin alleged that he is a member of any of these particular categories of people. The complaint is therefore dismissed with respect to Plaintiff Lewin for failure to allege facts sufficient to give him standing.

With respect to Plaintiff Lewis, accepting all facts alleged in the Complaint as true, the Court finds that Plaintiff Lewis has standing to bring injunctive and declaratory relief to the extent the relief sought is directed toward ongoing deprivations of her constitutional rights.

**B.      Exhaustion of Administrative Remedies and Statute of Limitations**

In the alternative, Defendant argues that Plaintiffs have failed to exhaust administrative remedies pursuant to California Code of Civil Procedure §1094.5. Moreover, even if Plaintiffs had

7

exhausted their administrative remedies, their claims are time-barred under the 90-day filing requirement set forth in § 1094.6(b). The Court is not persuaded by this argument. It is well-established that there is no exhaustion requirement for claims arising under 42 U.S.C. §1983. *Patsy v. Bd. of Regents*, 547 U.S. 496, 516 (1982). In *Patsy*, the Court held that exhaustion of state administrative remedies is not a prerequisite to a federal civil rights action under 42 U.S.C. §1983.[6]

With respect to the statute of limitations argument, Plaintiffs are not parties to the pending court cases between U-Haul and the City of Berkeley. Therefore, they are not held to the filing deadlines in those cases. Moreover, construing the complaint in a light most favorable to Plaintiffs, this case is not an administrative challenge to the revocation of the Use Permit; rather, it is a constitutional challenge based upon the discriminatory impact of the City of Berkeley's zoning decision. The statute of limitations for a § 1983 claim is three years. *Id.* Plaintiffs have brought this action approximately one year after the alleged conduct occurred. The Court denies Defendant's motion to dismiss on exhaustion and statute of limitations grounds.

### C. Plaintiffs' First Claim (Equal Protection)

Defendant argues that Plaintiffs' first cause of action fails to state a claim upon which relief can be granted because there is no "direct" claim under the Fourteenth Amendment. *See Azul-Pacifoco, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). Defendant argues that the claim must be dismissed and can only be analyzed under 42 U.S.C. § 1983.

Somewhat confusingly, Plaintiffs argue that the California state constitution authorizes a direct action under the Equal Protection clause, citing a case involving the California constitution.[7] *Gay Law Astudents Assn. v. Tel. & Tel. Co.*, 24 Cal.3d 458, 475 (1979). Plaintiffs' argument does not address the claim under the United States Constitution as pled in the their complaint. *See* Complaint ¶ 11.

---

[6] In its reply brief, Defendant City of Berkeley concedes that there is no exhaustion requirement under 42 U.S.C. § 1983.

[7] Plaintiffs essentially concede this point in a footnote: "If necessary Plaintiffs are willing to amend their Complaint to clarify the constitutional provision at issue."

8

The Court finds that the first claim, as currently pled, fails to state a claim upon which relief can be granted. Defendant is correct that a plaintiff complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983. *Azul-Pacifico, Inc.,* 973 F.2d at 705. Plaintiffs have properly included an Equal Protection claim under the second cause of action pursuant to 42 U.S.C. § 1983. The Court construes Plaintiffs' argument as a request to file an amended complaint alleging an Equal Protection claim under the California State Constitution. The motion to dismiss the first claim is therefore GRANTED with leave to amend.

### D. Plaintiffs' Second Claim (42 U.S.C. § 1983) Based on Equal Protection, Right to Travel and Interstate Commerce

Defendant argues that Plaintiffs' § 1983 claim must be dismissed because Plaintiffs have failed to allege sufficient facts constituting a custom, practice or policy of the city that has caused a violation of Plaintiffs' constitutional rights, relying upon *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). Plaintiffs argue that they have alleged an unconstitutional course of conduct "the result of which discriminates against plaintiffs by restricting their freedom of movement by ceasing the local operation of truck-sharing operations such as the U-Haul facility at 2100 San Pablo Avenue without any consideration for actual and viable alternatives that adequately secure these rights." Complaint at ¶ 7. The Defendant argues that the motion to dismiss must be granted under *Monell, supra*. In *Monell,* the Supreme Court conducts a two-part analysis regarding when municipal liability under §1983 can be established. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). The first part of *Monell* involves the Supreme Court's holding that actions may be brought against municipalities under 42 U.S.C. § 1983 for deprivations of federal rights. *Id.* The second part of the opinion recognizes a limitation on this right and holds that municipalities cannot be liable under § 1983 under a *respondeat superior* theory. *Id.* In that part of the opinion, the Supreme Court established the "official policy" requirement – that "municipal liability is limited to actions for which the municipality is actually responsible." *Id.* at 479. In *Pembaur v. City of Cincinnati,* the Supreme Court held that:

9

> a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy.

*Id.* at 480 (citations omitted).

Defendant's argument under *Monell* fails. Plaintiffs' allegations involve a single decision by the legislative body of the City of Berkeley – the City Council. There can be no dispute that this act constituted an act of official government policy.

Plaintiffs *are* required, however, to state a claim for an actual deprivation of a federal right under § 1983 in order to proceed with this case. Section 1983 provides that:

> Every person who, under the color of any statute . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. 1983. "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim pursuant to section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of the law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Court will address each of Plaintiffs' alleged constitutional violations in turn.

### 1.     Equal Protection

The Equal Protection Clause provides that no state shall "deny any person within its jurisdiction the equal protection of the law." U.S. Const. Amendment XIV, § 1. The Equal Protection Clause "is basically a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Where disparate treatment of a group is shown, the level of scrutiny to which the state's action is subjected depends upon the type of group classification at issue. *Id.* at 439-443.

A long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory intent or motive. *See e.g.*, *Washington v. Davis*, 426 U.S. 229 (1976);

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). These cases establish that Plaintiffs must prove two elements before they may be entitled to relief under the Fourteenth Amendment : 1) discriminatory effect; and 2) discriminatory purpose.  In *Arlington Heights* and *Davis*, a challenge based on "discriminatory effect" failed due to plaintiffs' inability to establish the existence of a discriminatory purpose.  In *Arlington Heights*, the Court found no evidence that the city intended to discriminate against racial minorities by refusing to re-zone property from single-family to multiple-family units, even though most minorities can only afford multiple-family units.  The Court explained in *Davis, supra*, that "disproportionate impact is not irrelevant, but is not the sole touchstone of an invidious racial discrimination. . ."  426 U.S. at 242.

Where, as here, a plaintiff seeks to prove the invidious discriminatory intent element of a violation of the Equal Protection Clause through disparate impact and " . . . the challenged governmental policy is 'facially' neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Arlington Heights* at 264-66) (*citing Washington v. Davis*, *supra*, at 242). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington v. Davis*, 426 U.S. at 242.  The Supreme Court explained in *Davis* that ". . . our cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact." *Id.* at 239.

Plaintiffs argue that mere allegation of discriminatory impact is sufficient citing, *inter alia, Flores v. Pierce* 617 F.2d 1386 (9th Cir. 1980).  There, the Ninth Circuit explained that "[t]he essence of an equal protection violation on racial grounds lies in the intent or motive to discriminate." *Id.* (citing *Arlington Heights*, *supra*).  The Ninth Circuit noted that one of the earliest Equal Protection cases establishes that "the effect of a law may be so harsh or adverse in its weight against a particular race that an intent to discriminate is not only a permissible inference but also a

11

necessary one." *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)). Indeed, there are cases where "a clear pattern unexplainable on grounds other than race, emerges from the effect of the state action." *Id.* (citing *Arlington Heights*, 429 U.S. at 266). The law is clear, however, that "such cases are rare. Absent a pattern as stark as that in . . . *Yick Wo*, impact alone is not determinative, and the Court must look to other evidence." *Arlington Heights* at 266. *Flores v. Pierce* is consistent with a long line of Supreme Court authority that requires evidence of discriminatory intent to prove an Equal Protection claim.

While, ultimately, Plaintiffs will be required to produce evidence of discriminatory intent or motive in order to prevail on their Equal Protection Claim, it is sufficient at the pleading stage to aver intent generally. Federal Rule of Civil Procedure 8(a) states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The rule does not require a plaintiff to "set out in detail the facts upon which he bases his claim." *Sanders v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001).

Even under the liberal "notice pleading" standard set forth in Rule 8, however, the Court finds that Plaintiffs' Complaint fails to allege sufficient facts that could constitute a violation under the Equal Protection Clause of the U.S. Constitution. First, as discussed above, Plaintiff Lewin is not alleged to be a member of any protected class. Second, with respect to Plaintiff Lewis, the Complaint fails to allege that the allegedly discriminatory action has resulted in impact upon African-Americans to a greater degree than other members of the population. Although the complaint alleges that Plaintiffs reside in "one of the most culturally diverse and immigrant rich in the country" (Complaint at ¶ 6), they do not allege how the City of Berkeley's actions have impacted a particular group of which they are members to a greater degree than any of the other categories of Berkeley residents . Third, the complaint fails to aver intent to discriminate generally. There is no allegation that the City of Berkeley acted with intent to discriminate when it decided to revoke U-Haul's permit. Moreover, Plaintiffs do not claim any pattern or repeated conduct on the part of the City of Berkeley that could support an allegation of discriminatory intent. While Plaintiffs allege that Defendant has engaged in a "course of state action," (Complaint at ¶ 7) there are no facts in the

complaint that could constitute a pattern or course of conduct.  Nor are there facts alleged that could be described as a "stark pattern" of discrimination, sufficient to support a claim based on solely on discriminatory effect under *Arlington Heights* and its progeny.  *See Sanders v. City of Los Angeles*, 250 F.3d at 687 (equal protection claim dismissed where complaint fails to allege discriminatory intent behind enactment of facially neutral policy).

The complaint contains an allegation of a single incident involving the closure of one rental truck business and the discriminatory impact it has had upon Plaintiffs, which is insufficient, even at the pleading stage.  Plaintiffs are permitted one opportunity to amend their complaint to allege all elements of an equal protection claim, including discriminatory intent, so long as there is a good faith basis to do so.  Accordingly, Defendant's motion to dismiss is GRANTED with leave to amend.

### 2. Right to Travel

The Supreme Court has long held that the right to travel is protected under the Fifth Amendment to the Constitution.  *Kent v. Dulles*, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) ("The right to travel is a part of the 'liberty' of which a citizen cannot be deprived without the due process of law of the Fifth Amendment.").

Defendant argues that the neutral zoning decision in this case was enforced against U-Haul, not against Plaintiff.  Thus, Defendants argue, the mere "incidental" burden on Plaintiffs' right to travel cannot constitute a constitutional violation.  Plaintiffs respond that the right to travel is a fundamental right and that "the city has deprived Plaintiffs of a resource they need to exercise their right to travel."  Plaintiff's Opp. at 16.  As such, the city action is a "direct infringement on that right, and is subject to strict scrutiny."  *Id.*

Plaintiffs rely on *Tobe v. City of Santa Ana*, 9 Cal.4th 1069 (1995) in support of their argument.  There, the California Supreme Court reviewed the law with respect to the right to travel both under the United States and California State Constitutions.  The court noted that "Neither the United States Supreme Court nor [the California Supreme Court] has ever held . . . that the incidental impact on travel of a law having a purpose other than restriction of the right to travel, and which does not discriminate among classes of persons by penalizing the exercise by some of the

13

right to travel, is constitutionally impermissible." *Id.* at 1100.  In *Tobe*, the Court described the city ordinance at issue as ". . .a nondiscriminatory ordinance which forbids use of the public streets, parks, and property by residents and nonresidents alike for purposes other than those for which the property was designed.  It is not constitutionally invalid because it may have an incidental impact on the right of some persons to interstate or intrastate travel." *Id.* at 1101.  The Court explained that California courts have found violations of the right to travel "only when a direct restriction of the right to travel occurred." *Id.*  California courts have repeatedly rejected the argument that any legislation that burdens the right to travel must be subjected to a strict scrutiny analysis. *Id.*

In the present case, there is no zoning ordinance or law that directly burdens the right to travel.  The revocation of the use permit held by U-Haul on San Pablo Avenue is not a regulation placing any direct restriction on the right of citizens of Berkeley to travel.  There is no allegation, for example, that the City of Berkeley has re-zoned the area in which Plaintiffs reside in order to prevent or restrict all moving companies from operating in Plaintiffs' neighborhood.  Instead, Plaintiffs claim that the closure of a single U-Haul facility in their neighborhood has done harm to "educational, employment and housing opportunities and causes [them] to be unfairly isolated and severed from those opportunities." Complaint at ¶ 1.  Plaintiffs allege generally that they "require the use of a truck or other large capacity vehicle to effectuate educational, business, housing, and other opportunities that present themselves." Complaint at ¶ 5.  This is not a *direct* burden on Plaintiffs' right to travel.

Plaintiffs cite several cases, all of which address city regulations directed at new residents, thus burdening new residents with restrictions that do not apply to existing residents. *See* Plaintiffs' Opp. at 16, citing *memorial Hospital v. Maricopa County*, 415 U.S. 250, 255 (1974) (restrictions on non-emergency medical care)*; Shapiro v. Thompson,* 394 U.S. 618, 629 (1969) *(overruled in part on other grounds by Edelman v. Jordan,* 415 U.S. 651, 670-71 (1974) (law denying public assistance to new residents); *Dunn v. Blumstein,* 405 U.S. 330 (1972)(law denying new residents right to vote).  In *Shapiro, Dunn, and Maricopa County*, the government imposed waiting periods on new residents, which discriminated against those who had recently exercised their right to interstate travel.  The regulations in these cases constituted direct burdens on the right of interstate migration.

14

Assuming all facts as true for purposes of the present motion to dismiss, the impact on the right to travel in the present case is incidental at best. Accordingly, Defendant's motion to dismiss on this ground is GRANTED. Plaintiffs are permitted to amend their complaint to allege facts that could support a finding that the City of Berkeley has imposed *direct* restrictions on Plaintiffs' right to travel.

### 3. Commerce Clause

Plaintiffs' commerce clause claim similarly fails to allege any facts that could support a violation of the commerce clause. Defendant argues that Plaintiffs' complaint fails to specify what city law or regulation is burdening interstate commerce. *Dept. Of Revenue of Kentucky v. Davis*, 128 S.Ct. 1801, 1808 (2008). The Court agrees. There is no allegation in the complaint of any direct impact on interstate commerce. The second cause of action contains the bare-bones allegation that "defendant's conduct as alleged herein infringe upon Plaintiffs [sic] rights, privileges and/or immunities, including but not limited to . . . interstate commerce." Complaint at ¶ 16.

The Court dismisses this claim with leave to amend in order to allege facts constituting a direct impact on interstate commerce.

### IV. CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss is GRANTED; Plaintiffs are permitted to file an amended complaint by February 6, 2009 that is consistent with this Order.

IT IS SO ORDERED.

Dated: January 6, 2009

JOSEPH C. SPERO
United States Magistrate Judge

15