IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERIMA LEWIS, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF BERKELEY, a municipality,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. C-08-05089 (WDB)<br><br>**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE** |

## INTRODUCTION

Plaintiff Kerima Lewis ("Plaintiff") brought this action to challenge a decision by the City of Berkeley ("Defendant") to revoke the use permit of a U-Haul facility that was located in her neighborhood (the U-Haul franchise was located at 2100 San Pablo Avenue, in west Berkeley). Plaintiff is an African-American female.[1]

Plaintiff filed her suit in state court on October 8, 2008, alleging violations of the equal protection clause of the Fourteenth Amendment. Plaintiff seeks damages, injunctive and declaratory relief, and recovery of reasonable attorney's fees. Defendant filed the petition for removal of the action on November 7, 2008. The case was assigned initially to Magistrate Judge Spero. The parties consented to his jurisdiction under 28 U.S.C. sec.

---

[1] In the original complaint, two plaintiffs, Kerima Lewis and David Lewin, brought equal protection claims against the City of Berkeley. By order of Magistrate Judge Spero, the Court found that the original complaint failed to allege facts that would give Plaintiff Lewin standing to sue as a member of any protected class. The amended complaint identifies only Kerima Lewis as Plaintiff.

636(c). Subsequently, the Clerk's Office transferred Ms. Lewis' case to me because it was related to an earlier-filed matter that was pending on my docket. *U-Haul Co. of California et. al v. City of Berkeley*, C-08-02313 (WDB).

Defendant initially filed its motion to dismiss on November 12, 2008. By order issued on January 6, 2009, Judge Spero granted Defendant's motion but gave Plaintiff leave to attempt once to cure by amendment the action's apparent legal deficiencies. In his Order, Judge Spero clearly identified dispositive deficiencies in Plaintiff's complaint and announced that Plaintiff would be afforded only one additional opportunity to frame a complaint that was viable as a matter of law. His Order stated that Plaintiffs would have "one opportunity to amend their complaint to allege all elements of an equal protection claim, including discriminatory intent, so long as there is a good faith basis to do so." Order, filed January 6, 2009 at 13: 8-10.

Thus, plaintiff well knew that it was incumbent on her to set forth in her pleading facts or circumstances which, if unrebutted and unexplained, would permit a rational trier of fact to infer, at least, that there was a meaningful possibility that racial animus infected the decision by the City to revoke the U-Haul franchise's use permit. Despite having every incentive and a full opportunity to do so, Plaintiff has failed to plead facts and circumstances that are sufficient to give her action plausible viability under the law. For that reason, we must GRANT Defendant's Motion to Dismiss, WITH PREJUDICE.

**STANDARD ON MOTION TO DISMISS**

A complaint that fails to state a claim for which relief can be granted should be dismissed. Federal Rule of Civil Procedure 12(b)(6). In assessing a motion to dismiss, the Court accepts allegations of material fact as true and construes the complaint in the light most favorable to the nonmoving party. *Nat'l Wildlife Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir. 1995).

The standard under which district courts are to pass judgment on complaints that are challenged under Rule12(b)(6) has been revisited recently by the Supreme Court. In *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544 (2007), the high Court expressly interred one common reading of *Conley v. Gibson,* 355 U.S. 41 (1957).  Thus, district courts are no longer to deny motions to dismiss for failure to state a claim solely on the ground that the moving party has failed to show that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic,* 550 U.S. at 561.  Under the standards endorsed by the *Bell Atlantic* majority, a complaint can survive attack under Rule 12(b)(6) only if it contains factual allegations which, at least, are rationally or plausibly "suggestive" of the ultimate contentions that plaintiff must prove in order to prevail. *Id.* at 556.

In the case at bar, to prevail on her equal protection claim, plaintiff must prove not only that the conduct she challenges had a disproportionate impact on her protected class, but also that racial animus was at least a substantial factor in producing that conduct.  In other words, she must prove both disproportionate impact and intent to discriminate.

It follows that plaintiff must plead facts or circumstances that are at least suggestive of a racially discriminatory intent.  Legal conclusions, bare averments, blanket assertions, conclusory allegations, and mere possibilities are not enough.  Her factual allegations must be sufficient at least to nudge her claims "across the line from conceivable to plausible." *Id.* at 570.

Because defending a lawsuit can impose such large burdens on parties, and because public airing of allegations of evil intent can cause so much collateral harm, trial courts are directed to proceed with special care when the acts or circumstances on which a complaint like Ms. Lewis' are based are, on their face, neutral – suggestive of no unlawful motive at all – or when there are, obviously, perfectly legitimate, even compellingly lawful purposes, by which they could be animated.  That is the situation here.

Plaintiff rests her claim that the revocation of U-Haul's use permit was animated by intentional racial discrimination principally on three grounds: (1) the City's amendment in 1998 of a zoning ordinance to prohibit "any new truck-sharing services to operate within the [west Berkeley] community;" (2) the allegedly "ad hoc" character of the City's decision to

revoke the U-Haul use permit, and (3) the contention that the revocation of the use permit contradicted the City's established policy of "protecting the environment by reducing greenhouse gases." Amended Complaint ¶¶ 7, 10, 11.

When examined, each of these actions is race-neutral on its face. Moreover, there are obvious and lawful purposes that appear to animate each of these challenged acts. In other words, there is essentially nothing in the facts or circumstances that plaintiff has pled that would even begin to suggest that the decisions she challenges were animated by racial discrimination.

In 1998 the City adopted an extensive package of zoning ordinances that was designed, on its face, to promote perfectly legitimate goals of good local government.[2] The multi-faceted set of regulations was designed to convert west Berkeley into a better balanced and integrated section of the City that would emerge with a real sense of community. The zoning ordinances were expressly intended to implement the broader vision of a 'West Berkeley Commercial District' that the City previously had crafted. Among many other things, the larger plan called for the creation within west Berkeley of "nodes" that would have distinctive characteristics that would advance the larger purposes of the overall plan for the area. Truck rental facilities were just one of many, many different kinds of uses (commercial and other) that the ordinances regulated. For example, while the ordinances prohibited the establishment of new truck rental outlets in designated nodes, they also prohibited the establishment (in nodes) of new open air markets, as well as outlets for renting or washing cars or for selling or servicing tires.

It also is noteworthy, and uncontested by plaintiff, that when it adopted the 1998 zoning ordinances the City explicitly grand-fathered the U-Haul facility (even though it was located in a designated node) – so, to continue to operate their truck rental business, all the proprietors had to do was comply with previously set terms. Under their grand-fathered

---

[2] Pursuant to Federal Rule of Evidence 201, Defendant proffered eleven exhibits in support of its motion to dismiss. The Court takes judicial notice of Exhibits A and B, attached to Defendant's Request for Judicial Notice. The following exhibits are public documents whose authenticity no party questions: (A) June 18 1998 - Ordinance No. 6419-N.S. Amending Zoning Ordinance No. 3018-N.S. and (B) October 9, 2007 - Berkeley City Council Resolution No. 63, 842- N.S.;

4

status, the owners of the facility continued to operate it for almost a decade before the City, on grounds having nothing to do with race, finally revoked their use permit.  In sum, Plaintiff has failed to plead any fact about this set of ordinances, or any circumstance surrounding the adoption of any of its sub-parts, that even remotely suggests that they were infected by racial animus.

The other two 'facts' or circumstances to which plaintiff points in her complaint suffer from similar failings.  While plaintiff makes the conclusory assertion that the course of action followed by the City in revoking the U-Haul use permit was "ad hoc" and departed from "normal procedures," these averments are as "bare" as averments come.  They stand naked in the amended complaint – supported by nothing.  Plaintiff fails to identify or even allude to any "normal" procedures from which the City allegedly deviated.  Similarly, plaintiff fails completely to suggest (in her amended complaint or in any other papers) what was "ad hoc" about either the multi-year process that led to the revocation of the use permit or the substantive criteria on which that decision was based.

In sharp contrast, the City has presented, in judicially noticeable form, a long, publicly recorded history of interaction with the proprietors and/or owners of the U-Haul facility that chronicles almost innumerable violations of racially-neutral conditions that had been imposed before the 1998 changes in the zoning laws.   There is nothing that appears "ad hoc" about the long  process the City followed, a process that included forgiving many violations, tolerating many complaints by neighbors, and extending many opportunities to the proprietors to bring their operation into compliance with the long-established terms on which their use permit had been granted.

The other fact that plaintiff purports to plead in support of her claim that the revocation of the use permit was animated by racial bias is her assertion, again supported by nothing, that, in revoking the permit, the City violated its own commitment to reduce greenhouse gases.  Plaintiff has made no averment that would tend to suggest that the revocation of U-Haul's use permit would, in fact, have the effect of causing a net increase in release of greenhouse gases.   Moreover, even if plaintiff had made some factual allegation

5

that suggested that this result might ensue, plaintiff has failed completely to allege facts that would tend to support an inference that any such alleged compromise of the greenhouse gas policy was attributable to racial animus.  On its face, the decision to revoke the use permit would seem much more likely to reflect a legitimate decision by the City to elevate one set of lawful policy objectives (to give west Berkeley a more integrated and attractive shape) above a possibly competing set of policy objectives (reducing greenhouse gases) – neither set having anything to do with race.

In sum, when we strip the complaint of its transparently conclusory allegations and examine the few facts and circumstances that plaintiff sets forth, we find nothing that suggests racial motive.  Because her claim under the equal protection clause requires proof of racial animus, it follows, under the mandates of *Bell Atlantic*, that we must DISMISS plaintiff's complaint.  And because plaintiff has failed for the second and final time to plead facts that state a claim, we dismiss her complaint WITH PREJUDICE.

IT IS SO ORDERED.

Dated: April 28, 2009

WAYNE D. BRAZIL
United States Magistrate Judge